IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
|     Plaintiff, | ) | |
| | ) | No. 14 CR 557 |
|     v. | ) | |
| | ) | Hon. Virginia M. Kendall |
| CHARLISE WILLIAMS, | ) | |
|     Defendant. | ) | |

**MOTION FOR JUDGEMENT OF ACQUITTAL OR NEW TRIAL**

NOW COMES THE defendant Charlise Williams, by her attorneys Molly Armour and Lillie McCartin and respectfully moves this Honorable Court, pursuant to Rules 29 and 33 of the Federal Rules of Criminal Procedure[1] and the due process clauses and fair trial rights secured by the United States Constitution, to enter a judgment acquittal as to Count 1, 2, 3, 4, and 5, or, in the alternative, for a new trial.

**I.    A JUDGEMENT OF ACQUITTAL SHOULD BE ENTERED BECAUSE THE EVIDENCE INSUFFIENT TO SUSTAIN A FINDING OF GUILT BEYOND A REASONABLE DOUBT**

The Court must enter a judgment of acquittal if, viewing the evidence in the light most favorable to the Government, no rational jury could have found the elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307 (1979). However, this standard "does not require the defendant to demonstrate that no evidence at all supports the conviction, but rather that the evidence cannot support a finding of guilt beyond a reasonable doubt." *United States v. Rahman*, 34 F.3d 1331, 1337 (7th Cir. 1994).

---

[1] In the event this Court concludes that the appropriate remedy for the issues raised herein is an Arrest of Judgment under Rule 34, this Motion is also brought pursuant to that Rule.

As adduced at trial, the evidence was insufficient as a matter of law to sustain the guilty verdict against Charlise Williams as to all counts.

The evidence was insufficient as a matter of fact to sustain the guilty verdict against Charlise Williams as to all counts.

The evidence was insufficient to establish Ms. Williams intended to defraud as to all counts.

## II. A NEW TRIAL OR A JUDGEMENT OF ACQUITTAL SHOULD BE ENTERED BECAUSE OF THE FOLLOWING ERRORS:

### a. The Court Erred in Limiting Certain Cross Examinations

The Constitution guarantees a defendant the right to effectively cross-examine witnesses in her trial. *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) ("The right of cross-examination is more than a desirable rule of trial procedure. It is implicit in the constitutional right of confrontation, and helps assure the accuracy of the truth-determining process.") (internal quotations omitted); *Alford v. United States*, 282 U.S. 687, 692 (1931) (cross-examination on relevant facts is a safeguard "essential to a fair trial."). While a trial Court may place reasonable limits on cross-examination, certain areas are considered essential, such as those involving key witnesses or issues. *United States v. Saunders*, 973 F.2d 1354, 1358 (7th Cir. 1992). Where limitations on the right to cross-examine "directly implicate the Sixth Amendment right of confrontation," the standard of review if *de novo*. *United States v. Smith*, 454 F.3d 707, 714 (7th Cir. 2006). Otherwise, such ruling is reviewed for abuse of discretion. *Id*.

### *i. The Court Erred in Circumscribing the Cross Examinations of Carrolyn Patterson and David Sugar*

The Court erred in preventing any cross-examination on certain issues relating to the bias and credibility of key witnesses Carrolyn Patterson, a member of the Board of Directors for the South Commons Condominium Association (SCCA), and David Sugar, general counsel for SCCA.

First, on direct examination both Carrolyn Patterson, a member of the Board of Directors for SCCA, and David Sugar, general counsel for SCCA, were asked if Charlise Williams was treated any differently than any other tenant owner who was behind in payments. Carrolyn Patterson testified "not to my knowledge." Tr. 6/15/16, at 363. David Sugar testified "absolutely not." Tr. 6/17/16, at 838. Second, on cross-examination both Ms. Patterson and Mr. Sugar testified that they were aware of the lawsuit filed by Charlise Williams against the South Commons Condominium Association. In both instances, the Court erroneously barred cross-examination of these two key witnesses as to these essential issues. These complete limitations go to the heart of the Sixth Amendment right to confrontation as the implicate key witnesses and issues, and circumscribed the Defendant's ability to question as to bias and credibility. The Court specifically disallowed any cross-examination to Ms. Patterson regarding as to whether Charlise Williams was treated any differently. In doing so the Court stated: "I don't want this jury to believe that they can reach a conclusion that says the condo association didn't treat her well, so we're going to acquit because that was bad for her." Tr. 6/15/16, at 380. Further, the Court specifically disallowed any cross-examination of Mr. Sugar regarding the specifics of the lawsuit filed by Charlise Williams. "And for that reason, getting into why she sued or what the suit was about and details about, you know, who joined the suit is completely irrelevant because it doesn't go to prove or disprove an element." Tr. 6/17/16 at 848.

"Where the defense is completely foreclosed from exposing the witness' bias or motive to testify, the limitation may directly implicate the defendant's constitutionally protected right of cross-examination." *United States v. Sasson*, 62 F.3d 874, 883 (7th Cir. 1995). "The Supreme Court has instructed as follows: 'bias is a term used … to describe the relationship between a party and a witness which might lead the witness to slant, unconsciously or otherwise, his testimony in favor of or against a party. Bias may be induced by a witness' like, dislike, or fear of a party, or by the witness' self-interest. Proof of bias is almost always relevant because the jury, as finder of fact and weigher of credibility, has historically been entitled to assess all evidence which might bear on the accuracy and truth of a witness' testimony.'" *Id.* at 883 n.6 (7th Cir. 1995) (quoting *United States v. Abel*, 469 U.S. 45, 52, 105 S.Ct. 465, 469, 83 L.Ed.2d 450 (1984)).

Here specific issues that were put into dispute by the government on direct examination were completely circumscribed during cross-examination. By eliciting testimony that Charlise Williams was treated the same as any other tenant in arrears, despite her ongoing litigation, the government put at issue Ms. Williams' treatment by SCCA and the lawsuit Ms. Williams filed against SCCA. Therefore, the defense should have been granted leeway to challenge these assertions and any underlying bias. The Court superseded the role of fact-finder, when it determined the defense could not pursue questions regarding SCCA's treatment of Ms. Williams or the specifics of the lawsuit filed by Ms. Williams. The Court's determination that this line of questioning was an attempt at an improper nullification argument was erroneous and improperly narrowed cross-examination. By completing forbidding this line of questioning to two key witnesses the defendant was not allowed to fully question these witnesses at to their bias or the credibility of the statements made on direct examination, therefore

preventing the jury from fully appraising the credibility of both Ms. Patterson and Mr. Sugar.

### ii. The Court Erred Limiting the Cross Examination of Ekkehard Wilke

In the cross-examination of key witness and co-defendant Dr. Ekkehard Wilke, the Court erroneously limited cross-examination into the credibility of the witness. Specifically, the Court limited inquiry regarding the witness's truthfulness with the Government as a sanction for counsel's failure to advise the Court in advance as to questions relating to a police investigation of the witness for running a prostitution ring. Tr. 6/16/16, at 666.

As background, the Government produced in discovery numerous FBI reports of interviews with witness Wilke dating from 2012 to 2016. Analysis of the reports reveal that he failed to apprise the FBI and the U.S. Attorney's Office that he had been under investigation in 2012 by the Riverside Police Department for running a prostitution ring until late 2015. Tr. 6/16/16, at 656. 661-62. During the intervening time, Dr. Wilke was covered by a proffer letter requiring his complete truthfulness and was admonished by the Government to be honest with them. Tr. 6/16/16, at 590-91, 655-56. Moreover, a comparison of the FBI reports with numerous complaints and attachments from a neighbor in his complex seem to reveal that Dr. Wilke did not disclose this information until directly confronted by the Government. Tr. 6/16/16, at 661-62.

The Court limited further inquiry into Dr. Wilke's truthfulness to the Government after counsel directly inquired about the Riverdale Police Department's investigation regarding a "prostitution ring." The Court voiced concern that the nature of such inquiry was prejudicial and advised that in light of an earlier sidebar discussion as to

payments made by Dr. Wilke to other women, that counsel should have raised the issue in advance. Tr. 6/16/16, at 656-57, 663-667.

The key issues of truthfulness with the Government, truthfulness when under obligation to be truthful, and failure to be truthful unless confronted go to the core of a witness's credibility. The prior area of cross-examination went to motive, Tr. 6/16/16, at 626, and prior to the question regarding an investigation into witness Wilke, no testimony had been elicited about paying for sex. Tr. 6/16/16, at 599-600, 602-05, 622-23, 632-34. Wilke's material omission of significant information to the Government was an entirely different category of cross-examination. Namely that the witness had information when he first began talking to the Government that he was investigated by a municipal police department for very serious conduct – running a prostitution ring. The affirmative sanction of limiting such essential areas of cross-examination because of an investigation into Dr. Wilke touched upon sexual content was error.

### b. The Court Erred in Limiting "Reverse 404(b) Evidence"

To the extent that the Court limited the cross-examination of Dr. Wilke because such material was considered 404(b) evidence and because defense counsel did not provide advance notice of such material, such ruling was erroneous. *See* Tr. 6/16/16, at 627-28, 661.

Federal Rule of Evidence 404(b) permits admission of extrinsic acts which go to "proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R. Evid. 404(b). While generally, this rule is utilized by the Government, "a defendant can seek to introduce evidence of a government witness's prior bad acts if that evidence tends to negate the defendant's guilt. *United States v. Sanders*, 708 F.3d 976, 992 (7th Cir. 2013).

Although such evidence is called "reverse 404(b) evidence," *Sanders*, 708 N.E.2d at 992, the rule is not entirely reciprocal. With regard to notice, in criminal cases, Rule 404(b) puts an additional onus on the Government to provide reasonable pretrial "notice of the general nature of any such evidence that the prosecutor intends to offer at trial." Fed. Rule Evid. 404(b)(2)(A). There is no such notice mandate for the defendant. *See* Fed. R. Evid. 404(b).

Moreover, "the defense is not held to as rigorous of a standard as the government in introducing reverse 404(b) evidence." *United States v. Seals*, 419 F.3d 600, 607 (7th Cir. 2005). *See also United States v. Stevens*, 935 F.2d 1380, 1403 (3d Cir. 1991) (seminal case*)* ("[W]hen the defendant is offering [404(b) evidence] exculpatorily, prejudice to the defendant is no longer a factor, and simple relevance to guilt or innocence should suffice as the standard of admissibility"); *United States v. Aboumoussallem*, 726 F.2d 906, 911-12 (2d Cir. 1984) ("[T]he standard of admissibility when a criminal defendant offers similar acts evidence as a shield need not be as restrictive as when a prosecutor uses such evidence as a sword[.]").

As the plain text of Rule 404(b) makes clear, the defendant has no obligation to provide notice to the Government of any intent to utilize such other act evidence. Thus, to the extent the Court presaged its limitation of cross-examination of co-defendant Ekkehard Wilke on the failure of counsel to provide such notice, that ruling was error.

### c. The Court Erred In Instructing the Jury

In filings, at both pretrial conferences, and in the jury instruction conference, the Defendant objected to certain Government instructions. This motion incorporates those arguments and objections here by reference. Specifically, the Court erred with regard to two jury instructions.

First, the Court erred in providing an instruction on aider and abettor liability. Second, the Court erred in not giving an instruction on good faith.

### III. CONCLUSION

WHEREFORE, for the reasons set forth herein, Defendant Charlise Williams moves this Court enter a judgment of acquittal as to Count One, Two, Three, Four, and Five, or, in the event that such a remedy is not appropriate, in the alternative, Defendant Charlise Williams moves for a new trial.

Dated: August 2, 2016

Respectfully submitted,

 s/  Molly Armour
MOLLY ARMOUR
LILLIAN MCCARTIN
Attorneys for Charlise Williams

Molly Armour
Law Office of Molly Armour
4050 N. Lincoln Avenue
Chicago, IL 60618
(773) 746-4849

Lillian McCartin
Attorney at Law
2040 N. Milwaukee Ave.
Chicago, Illinois 60647
(773) 727-3799